Argued and submitted April 26, reversed and remanded for new trial June 12, 2002

STATE OF OREGON,
*Respondent,*

*v.*

SCOTT M. TAYLOR,
*Appellant.*

C992168CR; A110973

48 P3d 182

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Oregon Public Defender.

Michael J. Slauson, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

■ Defendant appeals his convictions for menacing and pointing a firearm at another. ORS 163.190; ORS 166.190. He assigns error to the trial court's instructions to the jury. We review the correctness of jury instructions for errors of law, *State v. Moore*, 324 Or 396, 427, 927 P2d 1073 (1996), and reverse and remand for a new trial.

Defendant shared an apartment with two roommates. According to the state's evidence, defendant was asleep in his bedroom at around 8:00 a.m. on July 10, 1999, when Phil Wahner entered the apartment. Wahner was at the apartment to give one of defendant's roommates a ride to work. Wahner began making a lot of noise in an attempt to wake up defendant's other roommate, who was also asleep. Defendant, awakened by the noise, picked up his handgun, came out of his bedroom, and saw Wahner, whom defendant knew and recognized. Defendant pointed the gun at Wahner and said, "I don't appreciate that very much, Phil." Defendant's roommate stepped in front of Wahner, and defendant lowered the gun and walked backed to his bedroom. Defendant told the investigating officer that, when he was awakened, he did not recognize the loud voice. He also stated that he pointed the gun at Wahner to scare him out of the apartment.

According to defendant's evidence, defendant did not recognize the loud voice and thought that someone had broken in or entered the wrong apartment. When he saw Wahner, he did not see his roommate and initially thought Wahner had entered without permission. Defendant became aware of his roommate's presence when his roommate stepped in front of Wahner; defendant then lowered the gun.

At trial, defendant raised the defenses of "defense of persons" and "defense of premises." Those defenses provide that, under certain circumstances, a person is justified in using physical force upon another person for self-defense, defense of another, or defense of premises. ORS 161.209;[1]

---

[1] ORS 161.209 provides:

"Except as provided in ORS 161.215 and 161.219, a person is justified in using physical force upon another person for self-defense or to defend a third

ORS 161.225(1).[2] The trial court instructed the jury on those defenses and also, at the prosecution's request, instructed the jury about limitations on the use of deadly physical force:

> "Even though a person may use a reasonable degree of physical force in defense of premises, there are certain limitations on this privilege. Defendant is not justified in using deadly physical force on another person unless: (1) there are certain—and there are certain limitations on the use of deadly physical force. Defendant is not justified in using deadly physical force on another person unless he reasonably believes that the other person has—was committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person, or (b) committing or attempting to commit a burglary in a dwelling, or (c) using or about to use unlawful deadly force against the defendant, or (2), he reasonably believes it necessary to prevent an arson or other felony by force and violence by the trespasser."

Defendant objected to the requested instruction before trial "because there's no use of deadly physical force." Before the court gave the instruction, defendant pointed out that "the distinction is the use of the force and the use of deadly physical force. * * * [I]t's not appropriate to say it is the use of deadly physical force because the use of deadly physical force by definition results in a dead body." After the instruction was given, defendant took exception on the same grounds previously stated.

On appeal, defendant contends that the trial court erred in giving the disputed instruction because (1) there was no evidence that defendant had actually *used* deadly physical force; and (2) as a matter of law, the threatened use of deadly physical force and the actual use of such force are qualitatively different, and limitations that apply to the latter do not

---

person from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose."

[2] ORS 161.225(1) provides:

"A person in lawful possession or control of premises is justified in using physical force upon another person when and to the extent that the person reasonably believes it necessary to prevent or terminate what the person reasonably believes to be the commission or attempted commission of a criminal trespass by the other person in or upon the premises."

apply to the former. As support for that "matter of law" proposition, defendant invokes *State v. Burns*, 15 Or App 552, 562, 516 P2d 748 (1973), *rev den* (1984) (With respect to self defense, and limitations on the use of self defense, "[t]he threat of deadly force does not constitute the use of deadly physical force."). Defendant further contends that that error was prejudicial and warrants reversal, in that, in context, the instruction was materially misleading and confusing. *See State v. Thompson*, 328 Or 248, 266, 971 P2d 879 (1999) (instructional error is not reversible error " 'unless the appellate court can fairly say the instruction probably created an erroneous impression of law in the minds of the jurymen which affected the outcome of the case' "), *quoting Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970).

The state does not plausibly dispute that the instruction was unsupported by the evidence and was, thus, erroneous. However, the state contends that defendant's claim of error was not preserved for our review because, although defendant objected at trial to the applicability of the instruction, he did not identify—as he does on appeal—the potential prejudice resulting from that error.

■ The state's argument confuses preservation of error with harmless error. As noted, at trial, defendant informed the court that the proposed instruction was not supported by any evidence because, although there was proof of threatened use of deadly force, there was no proof of actual use of such force. That objection sufficiently alerted the court and opposing counsel to the problem with the proposed instruction. That was sufficient to preserve defendant's present claim of error. *See State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000) (holding party must provide trial court with explanation of objection specific enough to ensure that the court can identify the alleged error and correct it immediately if warranted).

■ Conversely, in this context, the consideration of potential prejudice follows, and is distinct from, the determination of error. That is, under our *Waterway Terminals* review, we may determine that a trial court committed error by giving a flawed instruction but that that error is not reversible error because the instruction probably did not

affect the outcome of the case. That determination of whether error warrants reversal is uniquely an appellate function. Contrary to the state's implication, we have never required trial counsel to tell a trial court not only why an instruction is erroneous but also why that error is so prejudicial that it may be deemed reversible error on appeal.

We thus conclude that defendant preserved his claim that the challenged instruction was erroneous. We further conclude, under *Burns*, that the trial court erred in giving the instruction because there was no evidence that defendant actually used deadly physical force. We turn, then to the whether that error requires reversal. *See Thompson*, 328 Or at 266. Defendant argues:

> "By giving an instruction about the use of deadly physical force, the trial court suggested to the jury that it could find defendant had used such force, when, legally, it could not. This could have confused the jury and prejudiced defendant. If the jury improperly found that defendant had used deadly physical force, it would have assessed the legality of his actions in light of the limitations on the use of such force. It would have subjected defendant's actions to a more stringent test to determine whether they were legally justified."

We agree. In the absence of evidence that defendant used deadly force, the instruction could have misled the jury into believing that the limitation on the use of deadly force also applied to the threatened use of deadly force. Such a belief would have precluded the jury, if it believed defendant's theory, from considering the defenses relied on by defendant. Consequently, reversal is required.

Reversed and remanded for new trial.